1
2
3
4
5
6
7
8         IN THE UNITED STATES DISTRICT COURT

9         FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   UNITED STATES OF AMERICA

12                          Plaintiff,

13        v.

14
     DAVID LIN,
15                          Defendant.

16

*E-FILED - 1/5/07*

Case No. CR-01-20071  RMW (PVT)

ORDER DENYING MOTION TO EXCLUDE
TESTIMONY OF GOVERNMENT INK
EXPERT

[Docket # 586]

17        Defendant David Lin moves to exclude the testimony of the government's document analyst,

18   Susan Fortunato, who compared the ink pigment formulation of two ink samples and identified the

19   company that supplied ink cartridges with that formulation.  An evidentiary hearing was held on

20   September 26, 2006 to determine the admissibility of the proffered testimony.  The court has

21   considered the evidence presented and the arguments of counsel and hereby denies the motion but

22   limits the scope of the testimony.

23        The government seeks to show that the ink on an ABC Seafood Restaurant receipt with

24   Chang's handwritten ink printing on it[1] and a copy of San Jose police report 00-066-0267 with an ink

25   obliteration on it have the same pigment formulation.  The police report concerns alleged terrorist

26   threats by Chang against Wendy Hsu and her family.  Both documents were found in a search of

27   _____

28   1.        Whether the printing is, in fact, Chang's may be disputed.

1

1    Lin's residence after the bombing.  The government submits that the evidence has some probative

2    value in that one could infer that Chang gave the documents to Lin at the ABC Restaurant as part of

3    their conspiracy to harm Wendy Hsu or a member of her family.

4         There are two main issues with respect to Fortunato's testimony: (1) is the opinion the

5    government intends to elicit from her sufficiently reliable to justify admission and (2) if it is reliable,

6    is it material.  The court addresses each issue.

7         **1.    Reliability**

8         In *United States v. Prime,* 432 F.3d 1147 (9th Cir. 2005), the Ninth Circuit affirmed the

9    defendant's counterfeiting conviction and upheld the trial court's admission of expert testimony

10   regarding handwriting analysis.  The court pointed out that reliability should be evaluated on a case-

11   by-case basis and that it could "neither rule out, nor rule in, for all cases and for all time the

12   applicability of the factors mentioned in *Daubert* . . . . *Id.* at 1152.[2]  However, it found the trial

13   court's analysis of the *Daubert* factors supported a finding of reliability sufficient to warrant

14   admission of the analysis.

15        In this case, the government went through each of the *Daubert* factors and showed that the

16   dye of an ink sample can be compared to a dye in the Secret Service's library of over 8500 samples

17   of known ink.  Several articles subject to review by a panel of experts and editors before publication

18   have discussed the use of the technique (comparison by chromatography) and the results obtained.

19   Studies and proficiency tests have shown that the error rate is less than 1%.  The technique is

20   recognized in a number of professional publications and used by a number of forensic examiners.

21        In this case, two standards of the American Standards for Testing Materials were followed:

22   one for comparing two ink samples and another for identifying a sample with the database of known

23   samples.  Fortunato, a lead document analyst for the Secret Service, explained how each standard

24   involves an optical examination followed by a chemical test (thin layer chromatography) and why

25   each is done.  She further explained that in this case she compared the ink used in handwriting on an

26   ABC restaurant receipt with the ink used in a handmade obliteration on the San Jose police report

27

28   2.    *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

ORDER DENYING MOTION TO EXCLUDE TESTIMONY OF GOVERNMENT INK EXPERT
Case No. CR-01-20071

and also compared the ink from each with ink in the Secret Service's database.  In her opinion the ink on the ABC receipt and that on the police report have the same dye formulation.  This does not mean that they came from the same pen or even the same batch of ink. She also concluded that each sample matched the pigment formulation of an ink in the database, specifically refill cartridges from Schmidt Technology.  She was also told by Schmidt that the ink was manufactured by a Swedish company named Roscinco exclusively for Schmidt.  The ink was first manufactured in 1994 and its production ceased during 2002.  The ink was placed in a variety of refill cartridges and sold to a number of sellers of different brands of writing instruments.

Fortunato acknowledged that the type of analysis she does involves some subjectivity in the reading of testing results.  Also, no analysis is done of the vehicle (what helps ink flow out of a pen). Different manufacturers may use different vehicles so various brands of pens may have identical pigment formulations.  Fortunato's testing is nevertheless very reliable for what it does, specifically comparing ink pigment formulations.

### 2.    Materiality

The defense argues that even if the analysis by Fortunato is reliable, it is not relevant or, if marginally relevant, inadmissible because its probative value is substantially outweighed by the danger of unfair prejudice and by considerations of undue delay.  *See* FRE 403.  The defense argues that although Fortunato's analysis tells us very little—many pens have the same ink pigmentation and this pigmentation was supplied over an eight year period—the jury is nevertheless going to place undue weight on it because it is offered by an expert and will take considerable time to present, particularly if the defense offers a competing expert's analysis.

The evidence does not show by itself a conspiratorial relationship between Chang and Lin. However, it does have some tendency to connect Chang and Lin.  The limited value of the evidence, if not obvious during the government's presentation, can be clearly and effectively brought out on cross-examination.  The jury is not likely to be misled or confused and may, in fact, believe that the government is attempting to make something out of a meaningless fact.  Nevertheless, the government needs to tie Lin with Chang and it should be allowed to offer relevant evidence on the subject.  The presentation of the evidence should not involve an undue consumption of time.  The

3

1   court finds the evidence relevant and admissible.

2         **3.    Scope of Admissible Testimony**

3        The government's proffer of Fortunato's testimony included information about her

4   communications with Schmidt Technology and her process of verifying that the ink was from

5   Schmidt.  Schmidt sent a first sample that did not match.  Fortunato then learned from Schmidt that

6   the ink had been changed in 2002 and Schmidt then sent the "old ink" which did match.  Fortunato

7   learned that the "old ink" was manufactured exclusively for Schmidt from 1994 to sometime in

8   2002.  She was told that the ink was sold in premium pens and Schmidt supplied a list of those

9   premium pen brands.  Fortunato also stated she has only twice in her career identified ink from a

10  high end, expensive pen.

11       An expert's opinion can be based upon facts made known to her even if not admissible if they

12  are of a type "reasonably relied upon by experts in the particular field in forming opinions or

13  inferences upon the subject."  FRE 703.  Here, the government wants to show by what Fortunato

14  learned from Schmidt that the ink was used in only high-end pens and, therefore, somewhat limited

15  in its use.  From that, the government wants the jury to draw the inference that it is likely that the ink

16  on the ABC receipt and police report came from the same pen.

17       Fortunato's analysis only compared the ink on the two documents with each other and with

18  the sample in the database of the Secret Service.  The scarcity of the particular ink pigment

19  formulation and the number of pens in which it was used are subjects beyond her expertise.

20  Therefore, her opinion should be limited to the comparisons she did which can include her work in

21  establishing that the second sample sent to her by Schmidt was available from Schmidt from 1994 to

22  some date in 2002 and matched the sample in the Secret Service database.  However, any testimony

23  by her that the ink was used in only high end pens or supplied exclusively by Roscinco to Schmidt is

24  inadmissible hearsay.

25

26  DATED:__1/4/07_____          _Ronald M Whyte_____

27                                               RONALD M. WHYTE

28                                               United States District Judge

ORDER DENYING MOTION TO EXCLUDE TESTIMONY OF GOVERNMENT INK EXPERT
Case No. CR-01-20071

1

2

Copy of order mailed on <u>1/5/07</u> to:

3

Barry J. Portman
Federal Public Defender
Daniel P. Blank

4

Angela M. Hansen
Assistant Federal Public Defenders

5

160 West Santa Clara Street, Suite 575
San Jose, CA 95113

6

7

Counsel for Defendant David Lin

8

Kevin V. Ryan
United States Attorney
Jane Shoemaker

9

Gary Fry
Assistant United States Attorneys

10

150 Almaden Blvd. Suite 900
San Jose, CA 95113

11

12

Counsel for Plaintiff United States

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

5

ORDER DENYING MOTION TO EXCLUDE TESTIMONY OF GOVERNMENT INK EXPERT
Case No. CR-01-20071